### WILLIAM WADFORD et al. v. D. W. DAVIS et al.

(Filed 10 November, 1926.)

**1. Executors and Administrators—Statutes—Assets—Creditors—Petition to Sell Lands—Actions—Procedure.**

Where the executor of the decedent has proceeded under the provisions of C. S., 74, to sell the realty to make assets to pay debts, and has filed his petition as required by C. S., 79, it being made to appear that the personalty was insufficient, and the proceedings are still pending, the surplus of the sale is to be regarded as realty to be distributed among the devisees, C. S., 56, and a judgment creditor of a devisee desiring to attack a debt set forth in the petition as being in fraud, and thus diminishing their distributive share of the estate, they should ˙do so in these proceedings, and not by independent action.

**2. Same—Ex Parte Proceedings—Parties—Judgments—Independent Actions.**

Where the executor has filed a proper petition for the sale of realty to pay debts (C. S., 79), the judgment creditors interested in the surplus, if not made parties, and desiring to contest one of the debts set out in the partition for fraud, may make themselves parties and proceed therein accordingly, the procedure being *ex parte* on the part of the executor (C. S., 759), and an independent action by them will not lie for fraud until after final judgment in the proceedings.

**3. Same—Presumptions.**

The regularity of the proceedings by an executor to sell lands to make assets to pay debts due by the estate will be presumed in the absence of evidence to the contrary. C. S., 74, 79, 56, 759.

**4. Same—Intervenors.**

The judgment 'creditors of the decedent, having an interest in the surplus of the sale of realty to make assets to pay debts, are such necessary or proper parties as to entitle them to intervene in the proceedings of the executor, and make themselves parties, before final judgment. C. S., 456.

APPEAL by plaintiffs from *Barnhill, J.,* March Term, 1926, of WAKE. Affirmed.

This is a civil action brought by William Wadford, Mary Eva Wall, G. G. Wall, J. M. Brewer, trustee in bankruptcy for Wake Grocery Company, and certain other judgment creditors of W. E. Mitchell, against D. W. Davis, W. E. Mitchell, W. E. Mitchell, Executor, W. A. Wall, Lucy A. Wall, N. Y. Gulley, commissioner.

The material allegations are that Mary Mitchell died in June, 1923, leaving a last will and testament duly probated in Wake County and the bulk of her property consisting of real estate was devised to W. E. Mitchell. That W. E. Mitchell was appointed executor. of the last will and testament of Mary Mitchell, and has duly qualified and is acting as such. That a special proceeding entitled "W. E. Mitchell, executor of Mary Mitchell, and W. E. Mitchell, Lucy A. Wall, W. A. Wall, *ex parte,*" was commenced in the Superior Court of Wake County before the clerk to sell the land of Mary Mitchell, deceased, to pay certain alleged indebtedness amounting to some $5,500. A part of the indebtedness, a $4,000 note alleged to be given by Mary Mitchell, deceased, to her daughter Lucy A. Wall, "is a false and spurious document and was not in truth or in fact ever executed or delivered by the said Mary Mitchell, deceased." That this $4,000 spurious note was a scheme and pretense to cheat and defraud the creditors of W. E. Mitchell. That the "defendants W. E. Mitchell, D. W. Davis and Lucy A. Wall, wrongfully and fraudulently conspired together to cheat and defraud the creditors of the said W. E. Mitchell and to cause to be executed and put forth the said alleged note," etc. That W. E. Mitchell is insolvent, except what was devised· to him by his mother, Mary Mitchell.

The plaintiffs prayed judgment, in part: (1) That defendants be restrained and enjoined from further prosecuting the special proceeding and the commissioner appointed by the court from selling the land, etc. (2) Alleged $4,000 note be declared null and void, etc.·

The defendants answer and deny the material allegations of the complaint and for a further answer say: "That the defendants are informed

and believe, and so allege, that the note for $4,000 and interest on it will amount to approximately $4,900. For the funeral expenses, taxes, and other debts, and costs of administration fixed by law, including the $4,000 note and interest, will aggregate about $5,500, and that the order of the clerk of the Superior Court of Wake County was orderly and properly made, and these plaintiffs had no right to interfere with such sale, thus nullifying a judgment of a court of competent jurisdiction; that if the plaintiffs have any cause of action, they should have made themselves parties to the special proceeding now pending before the clerk of the Superior Court, and asserted their right to the fund, which by law remains real estate and subject to judgment liens, after the debts of testatrix are paid. In addition to the amounts above set forth, the will itself provides that Lucy A. Wall be paid the sum of $300, and all other personal property, consisting of household and kitchen furniture, was specifically devised, and it is necessary to sell the land to pay this legacy. Wherefore, the defendants pray judgment: First, That plaintiff's action be dismissed. Second, That the land be sold under the order of the clerk of the Superior Court of Wake County, heretofore made. Third, That the plaintiffs be taxed with the costs incurred by reason of the restraining order. Fourth, That if plaintiffs claim any right to fund arising from the sale of said lands that they be required to assert their rights in the special proceeding now pending in the court of the clerk of the Superior Court."

The court below rendered judgment as follows: "That any right that the plaintiffs, or either of them may have against the defendants, or either of them on account of the matters and things alleged in the complaint could be asserted only in the special proceeding pending before the clerk of the Superior Court of Wake County for the sale of the lands of Mary Mitchell, deceased, to make assets for the payment of the alleged indebtedness of the said Mary Mitchell, deceased, which said special proceeding is referred to in the complaint filed in the cause, and the court being of the further opinion that this court has no jurisdiction to hear and determine the issues raised in the pleadings filed in the above entitled cause and that the complaint does not state a cause of action; and the defendant having demurred *ore tenus* to the complaint, it is ordered and adjudged that said demurrer be, and it is, hereby sustained and that this action be, and is hereby dismissed," etc.

The plaintiffs excepted and assigned as error the judgment rendered, and appealed to the Supreme Court.

*Mills & Mills, E. W. Timberlake & Son, Douglass & Douglass and R. N. Simms for plaintiffs.*

*N. Y. Gulley for defendants.*

CLARKSON, J.  C. S., 74, is as follows: Sale of realty, if personalty insufficient for debts.  When the personal estate of a decedent is insufficient to pay all the debts, including the charges of administration, the executor, administrator or collector may, at any time after the grant of letters, apply to the Superior Court of the county where the land or some part thereof is situated, by petition, to sell the real property for the payment of the debts of such decedent."

C. S., 56, is as follows: Surplus of realty sold for debts is real assets. All proceeds from the sale of real estate, as hereinafter provided, which may not be necessary to pay debts and charges of administration, shall, notwithstanding, be considered real assets, and as such shall be paid by the executor, administrator or collector to such persons as would have been entitled to the land had it not been sold."

An *ex parte* petition was filed in the Superior Court of Wake County before the clerk to sell the land of Mary Mitchell, deceased, to pay her debts.  The executor and all the devisees under the will, all being of age, were made parties and an order made appointing a commissioner to sell the land.  The contents of the petition for sale must be as follows: C. S., 79.  "The petition, which must be verified by the oath of the applicant, shall set forth, as far as can be ascertained: (1) The amount of debts outstanding against the estate.  (2) The value of the personal estate, and the application thereof.  (3) A description of all the legal and equitable real estate of the decedent, with the estimated value of the respective portions or lots.  (4) The names, ages and residences, if known, of the devisees and heirs at law of the decedent."

A license to sell real estate will be granted if the personalty is insufficient for the payment of the debts.  It must be shown in a petition to sell land to make assets that the personal estate has been exhausted, or it will be clearly insufficient to pay the debts of the estate.  C. S., 74; *Shields v. McDowell,* 82 N. C., p. 137; *Clement v. Cozart,* 107 N. C., 695; *Moseley v. Moseley, ante,* 243.

In *Morris v. House,* 125 N. C., 555, it is said: "It was claimed on the argument for the plaintiffs (and we are not furnished with any argument or brief for defendant), that the sale was made under the second order (May Term, 1864), which order is styled 'John Carson, administrator, etc., and others, *ex parte,*' and the report of sale is styled 'John Carson, administrator, etc., and others, *ex parte,*' and the plaintiffs contend that this of itself shows that they were not parties.  We do not assent to this proposition, though the better and more regular way would have been to make the heirs at law of the defendant's intestate parties defendant, yet we do not say that this was absolutely necessary in order to bind the heirs and convey the title.  It has been held that it was not.  *Harris v. Brown,* 123 N. C. 419, and *Ex parte Avery,* 64 N. C., 113."

C. S., 759, is as follows: *"Ex parte;* commenced by petition. If all the parties in interest join in the proceeding and ask the same relief, the commencement of the proceedings shall be by petition, setting forth the facts entitling the petitioners to relief, and the nature of the relief demanded." C. S., 760, the "clerk acts summarily," etc.

The presumption from the record is that this *ex parte* special proceeding is regular in every respect. From a careful reading of the complaint, there is no allegation that the interlocutory order, ordering the sale made by the clerk was obtained by fraud, nor is there any final judgment in the cause. The whole basis of the complaint is that the $4,000 note made by Mary Mitchell to Lucy A. Wall "is a false and spurious document," and the further allegations charging those who "fraudulently conspired to cheat and defraud the creditors of W. E. Mitchell." So far as the *ex parte* proceeding had gone, at the time of the commencement of this action, there is nothing shown by the record that it was irregular, erroneous or void. *Fowler v. Fowler,* 190 N. C., 536; *Finger v. Smith,* 191 N. C., 818. The action for the sale of the land, under the *ex parte* proceedings was for the payment of the testatrix's debts.

In *Carter v. Rountree,* 109 N. C., 29, it is said: "It is well settled, that pending an action before the *final judgment,* an interlocutory order or judgment may be attacked for fraud by a *motion or proceeding in the action,* but after the final judgment the remedy for fraud is by an independent action brought for the purpose. See the cases cited, *supra,* and other cases cited in Seymour's Digest (7th), p. 281 *et seq."*

In *Moody v. Wike,* 170 N. C., 544, citing a wealth of authorities, it is said: "When a cause is closed by a *final judgment,* a proper remedy is to proceed by an independent civil action to set it aside if it was procured by fraud."

In *Fowler v. Fowler, supra,* p. 541, it is held: "It is well settled that for fraud perpetrated on a party to the action the judgment must be attacked by an independent action, citing authorities.

The action of plaintiffs is a novel procedure. We can find no precedent like it, or to sustain it. The order appointing a commissioner in the *ex parte* proceeding is interlocutory and not a final judgment, and therefore an independent civil action could not be brought if the interlocutory order was procured by fraud. Plaintiffs do not attack the *ex parte* proceeding, but attack the validity of a note which, if paid, would diminish the estate of W. E. Mitchell, devised to him by his mother Mary Mitchell, and thus effect the quantum of plaintiffs' interest in the land, they being judgment creditors of W. E. Mitchell. They have a lien as judgment creditors of W. E. Mitchell on the land willed him, subject to all valid claims against the estate of Mary Mitchell and subject to his homestead rights.

Part of C. S., 614, defining rights of judgment creditors, is as follows: "And is a lien on the real property in the county where the same is docketed of every person against whom any such judgment is rendered, and which he has at the time of docketing thereof in the county in which such real property is situated, or which he acquires at any time thereafter," etc.

Under C. S., 56, *supra,* the surplus of realty sold for debts is real assets, and paid to such person as would have been entitled to the land had it not been sold.

C. S., 456, in part, is as follows: "Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff *or who is a necessary party to a complete determination or settlement of the questions involved,"* etc.

Under our liberal practice, and the facts and circumstances of this case, we think the language of the statute broad and comprehensive enough to permit plaintiffs in the present action to intervene as parties in the *ex parte* proceedings. The settlement of the only question involved is the validity of the $4,000 note. When they become parties and the pleadings raise an issue of fact as to the validity of the note it can be tried out by a jury at term. This does not interfere with the orderly procedure of the sale of the land, but settles the controversy as to the validity of the alleged spurious $4,000 note, and fixes the duty on the executor, W. E. Mitchell, to whom payment should be made out of proceeds derived from the sale of the land. *Jones v. Asheville,* 116 N. C., p. 817.

30 Cyc., p. 127, says: *"Under American Codes.* In other cases, however, and notably in recent cases, these enactments have been interpreted as permitting a very full joinder of defendants. This tendency is especially marked in actions seeking equitable relief. The provisions of The Code, it is declared, adopted the rule of equity joinder in its most liberal form. A community of interest among defendants is necessary, but it is community of interest in something wider than a precise 'subject of action' between plaintiff and each defendant—it is a community of interest 'in the controversy.' There is a noticeable tendency under The Code, as in equity pleading, to treat the rule, not as an inflexible rule of practice or procedure, but as a rule founded in general convenience, which rests upon a consideration of what will best promote the administration of justice without multiplying unnecessary litigation on the one hand or drawing suitors into needless and unnecessary expenses on the other." *Oyster v. Mining Co.,* 140 N. C., 135.

For the reasons given, the judgment of the court below is
Affirmed.