McRorie v. Shinn

GRACE TAYLOR McRORIE AND HUSBAND HOWARD S. McRORIE, ELIZABETH TAYLOR BURGESS (WIDOW), AND KENNETH B. CRUSE, PLAINTIFFS v. ANNIE M. SHINN AND HUSBAND P. S. SHINN, AND L. O. CLINE AND WIFE ANNIE M. CLINE, ORIGINAL DEFENDANTS, AND CABARRUS COUNTRY CLUB, INCORPORATED, ET AL, ADDITIONAL DEFENDANTS

No. 7119SC394

(Filed 23 June 1971)

1. Executors and Administrators § 16— sale of lands to make assets — presumption of validity of proceedings

   Proceedings by an executor to sell lands to make assets to pay debts due by the estate of his testator will be presumed regular in the absence of evidence to the contrary.

2. Executors and Administrators § 13— sale of lands to make assets — life tenant — unborn remaindermen

   Where lands were devised to testator's daughter for life with remainder to her children, the life tenant represented the entire title, as far as her unborn children were concerned, for the purpose of enabling the court to proceed in special proceedings instituted by the executor to sell the lands to make assets to pay debts of the testator, and children thereafter born to the life tenant are bound by the judgments ordering sales of the lands, notwithstanding unborn remaindermen were not made parties to the proceedings.

3. Infants § 6— guardian ad litem for unborn infants

   In the absence of statute, an unborn infant cannot be made a defendant in an action and be represented by a guardian *ad litem*.

4. Executors and Administrators § 13— sale of lands to make assets — guardian ad litem for unborn infants

   There was no statute in this jurisdiction in 1907 or 1908 requiring or authorizing a guardian *ad litem* for unborn infants in a special proceeding to sell lands to make assets to pay debts of a decedent.

5. Executors and Administrators § 13— sale of lands to make assets — class representation of unborn remaindermen

   In special proceedings to sell lands to make assets to pay debts of the estate, failure to provide plaintiff remaindermen, then unborn, with class representation by making contingent beneficiaries then living parties to the proceedings did not render the proceedings fatally defective.

6. Judgments § 19— attack on voidable judgment

   The proper procedure for attacking an irregular or voidable judgment is by motion in the cause, and such motion must be made within a reasonable time.

7. **Estates § 3; Executors and Administrators § 16— sale of lands to make assets — attack by remaindermen — death of life tenant**

Remaindermen did not have to wait until the death of the life tenant to attack the validity of proceedings in which lands were sold to make assets to pay debts of an estate.

8. **Executors and Administrators § 16— attack on sale of lands to make assets — reasonable time**

Action instituted in 1970 by plaintiff remaindermen, who had both reached majority by 1941, attacking the validity of 1907 and 1908 proceedings in which lands were sold to make assets was not brought within a reasonable time.

APPEAL by plaintiffs from *Gambill, Judge,* 8 March 1971 Session of CABARRUS Superior Court.

This action was brought for the purpose of determining the title, if any, of plaintiffs in certain lands in Cabarrus County. Plaintiffs contend that the action is not only to determine their title but to remove cloud upon and quiet title to the real estate in question; also to obtain possession of the real estate.

The action was heard without a jury on stipulations, agreed facts and documentary evidence. Pertinent facts necessary for an understanding of this appeal are summarized as follows:

George M. Misenheimer (George) died testate on 17 January 1907, a resident of Cabarrus County, leaving a Last Will and Testament dated 24 November 1904 and containing the following pertinent provisions: "I want enough of land sold to pay my debts. I bequeath and give the balance of my land and other property except my mill property to my beloved wife Sarah & daughter Rosanna Misenheimer—their lifetime. Provided Rosanna has no heirs, Then it shall go to C. W. Misenheimer my son, his life time and then go to his heirs at his death. My interest in the mill property with what he owes me goes to C. W. Misenheimer. * * * I appoint or name Chas. A. Fisher as my executor of my last will and testament." Said will was probated on 1 February 1907 and Fisher qualified as executor of the estate on 2 February 1907.

George owned six separate parcels of land at the time of his death, as follows: a 41½ acre tract, a 109 acre tract, a 38 acre tract, two lots, and the Misenheimer graveyard tract. He was survived by his widow, Sarah, a son, Charles W., and a daughter, Rosanna, all of whom were more than 21 years of

age; also three grandchildren, minor children of C. W. Sarah died in 1918 or 1919, C. W. died in 1945, Rosanna died intestate on 26 December 1965 survived only by her two children, plaintiff Burgess who was born in 1917 and plaintiff McRorie who was born in 1920.

In June 1907, Fisher, as executor, instituted a special proceeding to sell the 41½ acre tract, the 109 acre tract, and the two lots to make assets to pay debts and charges of administration. Fisher was named as petitioner in the proceeding and C. W., Rosanna and Sarah were named as respondents. Following a public sale of the land, and confirmation of the sales by the clerk, deeds were made by Fisher, as commissioner, for the 109 acre tract to E. W. Misenheimer, for the 41½ acre tract to David Earnhardt, for one of the lots to C. W., and for the other lot to Rosanna.

On 9 June 1908, Fisher, as executor, instituted a second special proceeding to sell the 38 acre tract to make assets to pay the remaining debts and charges of administration of George's estate. The parties in the second proceeding were the same as in the first and a sale of the 38 acre tract to Rosanna was confirmed and commissioner's deed made to her.

Defendants are in possession of various portions of the lands, claiming title by mesne conveyances from the grantees in the deeds from Fisher pursuant to the two special proceedings.

In recent years the lands have become highly improved through the development of residential subdivisions, a country club and the construction of numerous residences and other structures including a church occupied by the Epworth United Methodist Church.

Plaintiff Cruse claims title to an undivided one-half interest in the subject property by virtue of quitclaim deeds from the femme plaintiffs (and their husbands) executed in 1954.

Plaintiffs contend that under the will of George, Rosanna was devised a life estate in the subject property, subject to the life estate of Sarah, and that the femme plaintiffs were contingent remaindermen under the will; that their title accrued when they were born in 1917 and 1920; that the 1907 and 1908 special proceedings were void as to them for the reason that

they were not made parties to said proceedings, either by guardian *ad litem* or by virtual representation; that the children of C. W. were living contingent remaindermen in 1907 and 1908 and were not made parties to the proceedings; that had the children of C. W. been made parties, the femme plaintiffs would have been bound under the doctrine of virtual representation.

In their pleadings, defendants pled validity of the special proceedings, validating statutes, seven years and twenty years statutes of limitations, and laches on the part of plaintiffs.

The trial court found facts and made conclusions of law in favor of defendants, ordered that the action be dismissed, and adjudged that defendants are the rightful owners and entitled to possession of the property. Plaintiffs appealed.

*Cole & Chesson by James L. Cole for plaintiff appellants.*

*Hartsell, Hartsell & Mills by William L. Mills, Jr., and W. Erwin Spainhour; Williams, Willeford & Boger by John Hugh Williams; Wardlow, Knox, Caudle & Wade by Lloyd C. Caudle and E. T. Bost, Jr., for defendant appellees.*

BRITT, Judge.

In their brief, defendants state that the grounds upon which they rely for their right of ownership and possession of the subject lands are summarized as follows:

(1) Chain of title from the common source, George M. Misenheimer, through valid deeds from the Commissioner-Executor, pursuant to special proceedings for the sale of said real property in 1907 and 1908 to make assets to pay debts, and from power of sale contained in the will of George M. Misenheimer, and mesne conveyances.

(2) Curative statutes validating any defect in the special proceedings, G.S. 28-100, 101, 102, 103 and G.S. 41-12.

(3) Adverse possession for more than twenty (20) years under G.S. 1-39 and G.S. 1-40.

(4) Adverse possession under color of title for more than seven (7) years under G.S. 1-38.

(5) Laches on the part of plaintiffs barring recovery by them.

Suffice to say, if the record establishes either of the five defenses listed above, defendants are entitled to prevail and the judgment appealed from should stand. We hold that defense (1) is sufficiently sustained by the record to entitle defendants to an affirmance of the judgment and it is not necessary for us to pass upon the merits of the other defenses.

George's will has been partially construed by the Supreme Court of North Carolina in two instances. In *Taylor v. Honeycutt*, 240 N.C. 105, 81 S.E. 2d 203 (1954), the court held that Rosanna acquired a life estate under the will; the court specifically refrained from further interpretation. In *McRorie v. Creswell*, 273 N.C. 615, 160 S.E. 2d 681 (1968), the court held that Rosanna's interest in a .60 acre lot was clearly a life estate, and that when she died her two children took the remainder in fee by clear implication.

[1] With respect to the validity of the 1907 and 1908 special proceedings, we begin with the premise that the regularity of the proceedings by an executor to sell lands to make assets to pay debts due by the estate of his testator will be presumed in the absence of evidence to the contrary. *Wadford v. Davis*, 192 N.C. 484, 135 S.E. 353 (1926).

The validity of the conveyances pursuant to the 1907 and 1908 special proceedings must be determined by statutes and court decisions applicable at that time. Several statutes pertaining to judicial sales have been enacted since 1908 and court decisions based on those enactments have been rendered. Therefore, our holding to the effect that the deeds executed by Fisher, pursuant to the 1907 and 1908 special proceedings, passed good title to the subject property to defendants' predecessors in title is based upon our interpretation of pertinent statutes and court decisions applicable at the time.

The case of *Carraway v. Lassiter*, 139 N.C. 145, 51 S.E. 968 (Filed 26 September 1905), provides guidance for us in the case at hand. Pertinent facts in *Carraway* are as follows: Testatrix died in 1895, leaving a will devising her estate including an 1100 acre plantation to her minor granddaughter Inez for life, remainder to such children as Inez might leave surviving, and in default of issue, to the Oxford Orphan Asylum. Pursuant to a petition by the executor in which Inez, her husband, her guardian *ad litem,* and the orphan asylum were named respond-

ents, the clerk of superior court ordered a sale of a substantial portion of the land to make assets to pay debts of the testatrix. After due advertisement the land was sold at public sale, the sale was later confirmed and deed dated 30 December 1896 was made to the purchaser upon payment of purchase price. On 7 November 1904, a petition was filed in the cause by Inez, her husband and their children, said children being born subsequent to the decree of confirmation aforesaid. Inez died after the filing of the last mentioned petition; her children claimed title to the land as remaindermen after the termination of the life estate of Inez under the will. The court held that although Inez's children were not parties to the proceeding that they were bound by the judgment ordering the land sold to make assets.

In *Carraway*, the court appears to have made a distinction between a special proceeding to sell land to make assets to pay debts and a proceeding to sell land for some other purpose such as partition. We quote from the opinion: "If the proceeding had been one in which the life tenant had, for any proper reason, invoked the aid of the court to sell the land, as for partition, only those who were parties, either personally or by representation, would be bound by the decree." However, obviously referring to the proceeding before it, the court said:

"The proceeding is based upon the theory that the executor is by order of the court selling the lands of his testatrix which are subject to the payment of her debts, and the devisees or heirs at law are brought in that they may show cause why he may not have license to do so. If the petitioners had been IN ESSE at the time the proceeding was instituted it would have been necessary to divest their interest to make them parties. It cannot be that a person indebted may, by devising his lands, upon contingent limitations to parties not IN ESSE prevent their sale for the payment of his debts until all who may by possibility take are born or every possible contingency is at an end. Mrs. Carraway (Inez), for the purpose of enabling the court to proceed in the cause, represented the entire title, and children thereafter born to her are bound by the judgment."

[2]    We think Rosanna occupied the same position in George's will that Inez occupied in the will in the Carraway case; and

McRorie v. Shinn

that in the 1907 and 1908 proceedings to sell land to make assets to pay debts of the testator, Rosanna, "for the purpose of enabling the court to proceed in the cause, represented the entire title" as far as her children were concerned "and children thereafter born to her are bound by the judgment." We do not consider it necessary to pass upon defendants' contention that George's executor was authorized under the will to sell without a court proceeding a sufficient amount of land to pay George's debts.

[3, 4] Plaintiffs' contention that the 1907 and 1908 special proceedings were void as to plaintiffs because the femme plaintiffs were not represented by a guardian *ad litem* is without merit. In *McPherson v. Bank,* 240 N.C. 1, 81 S.E. 2d 386 (1954), it is said: "The rule is that, in the absence of statute, the capacity to be sued exists only in persons in being. 67 C.J.S., Parties, Sec. 30; McIntosh, North Carolina Practice and Procedure, pp. 228, 230, and 235. With us, in the absence of statute, an unborn infant cannot be made a defendant in an action and be represented by a guardian *ad litem. Deal v. Sexton,* 144 N.C. 157, 56 S.E. 691." Our investigation fails to disclose the existence of any statute in this jurisdiction in 1907 or 1908 requiring or authorizing a guardian *ad litem* for unborn infants in a special proceeding to sell land to make assets to pay debts of a decedent. We are aware of Section 1590 of the Revisal of 1905 and the Revisal of 1908 but do not think they are applicable to a proceeding to sell land to make assets; it appears clear that they would be applicable to a proceeding to sell land for reinvestment of proceeds.

[5] Plaintiffs also contend that the 1907 and 1908 special proceedings were void as to them for the reason that the children of C. W. who were living at that time were not made parties to the proceedings; plaintiffs contend that if said children had been made parties, the femme plaintiffs would have had virtual representation. Although we think better practice would have been followed if C. W.'s children had been made parties and a guardian *ad litem* had been appointed for them, we do not think the failure to provide the *femme* plaintiffs with class representation rendered the proceedings fatally defective. *Carraway v. Lassiter, supra. Beam v. Gilkey,* 225 N.C. 520, 35 S.E. 2d 641 (1945).

McRorie v. Shinn

[6-8]    At most the 1907 and 1908 special proceedings were irregular or voidable. It is well settled in this jurisdiction that the proper procedure for attacking an irregular or voidable judgment is by motion in the cause, 5 Strong, N. C. Index 2d, Judgments, Section 19, Page 38, and that such motion must be made within a reasonable time. *Menzel v. Menzel,* 254 N.C. 353, 119 S.E. 2d 147 (1961). It is admitted that plaintiff McRorie became 21 in 1941 and that plaintiff Burgess became 21 in 1938; the femme plaintiffs admit that they have lived in Cabarrus County in the general vicinity of the subject property during their entire lifetimes. Mrs. Burgess resided within sight of the property from the time of her birth until 1969, and they both had general knowledge of the improvements (valued at more than one million dollars) made from time to time upon the parcels of land deeded to the defendants. Plaintiffs' contention that they had no right to bring any type of action to attack the 1907 and 1908 proceedings until Rosanna died in 1965 is not supported by decisions of our Supreme Court. In *Menzel v. Menzel, supra,* the court said: "It is true that the statute of limitations in an ejectment action does not begin to run against the remainderman until the death of the life tenant. 'This does not mean, however, that such remainderman may not move to vacate a void or voidable judgment until after the expiration of the life estate. This he may do at any time if the action is taken seasonably and laches cannot be imputed to him.' " (Citations.) We think the femme plaintiffs waited an unreasonable time to attack the validity of the 1907 and 1908 proceedings, and the male plaintiff is bound by their unreasonable delay.

For the reasons stated, the judgment of the superior court denying plaintiffs any relief and declaring defendants the rightful owners of the property in controversy is

Affirmed.

Judges CAMPBELL and GRAHAM concur.