Fisher v. Misenheimer

---

CHAS. A. FISHER, EXECUTOR OF GEORGE M. MISENHEIMER, DECEASED, PETITIONER AND J. CLAY QUERY AND WIFE, OLLIE M. QUERY, MOVANTS v. CHAS. W. MISENHEIMER, ROSANNA MISEN-HEIMER AND SARAH MISENHEIMER, RESPONDENTS AND GRACE TAYLOR McRORIE, ELIZABETH TAYLOR BURGESS AND KENNETH B. CRUSE, INTERVENORS

No. 7419SC751

(Filed 20 November 1974)

Contracts § 18— sale of devised property — failure to honor bid — abandonment of contract

Actions by child of testator who bid $60 for a lot sold by executor to make assets with which to pay debts of the estate amounted to an abandonment of the contract between the child and the executor where the child (1) failed to pay the $60 and demand a deed, (2) filed no exception to the executor's final account which stated that because of the child's failure to comply with his bid, the lots he bid on would continue to belong to the estate, and (3) accepted a warranty deed from his sister for her undivided one-half interest in and to the lot in question and subsequently executed a warranty deed to his sister for all his undivided one-half interest in and to the lot, since that exchange of deeds between the children indicated that they agreed with the statement in the final accounting that the lots which the child did not pay for continued to belong to the estate.

APPEAL by intervenors from *Exum, Judge,* 4 March 1974 Civil Session of Superior Court held in CABARRUS County.

This appeal involves another episode in extensive litigation over real estate devised in the will of George W. Misenheimer (testator) who died on 17 January 1907. The cases of *Taylor v. Honeycutt,* 240 N.C. 105, 81 S.E. 2d 203 (1954); *McRorie v. Creswell,* 273 N.C. 615, 160 S.E. 2d 681 (1968); and *McRorie*

*v. Shinn,* 11 N.C. App. 475, 181 S.E. 2d 773, *cert. denied,* 279 N.C. 395, 183 S.E. 2d 242 (1971), involved the will and other aspects of the estate of said testator, as reported in each case. The land involved here is the northern half of the parcel referred to in the will as lot no. 1.

Here, intervenors, Grace Taylor McRorie (Mrs. McRorie) and Elizabeth Taylor Burgess (Mrs. Burgess), granddaughters of testator, and K. B. Cruse (Cruse) appeal from judgment affirming an order of the Clerk of the Superior Court of Cabarrus County, entered in a special proceeding instituted in 1907, appointing a commissioner to execute and deliver a deed for the subject property which was sold in said proceeding in 1907, upon the payment of the purchase price, plus interest. The following pertinents facts appear:

(1) In his will, testator devised the subject property, along with other real estate, to his widow, Sarah, and daughter, Rosanna, for "their life time"; should Rosanna have no "heirs" then the property would go to testator's son, C. W., his lifetime, and at his death to his heirs. (See 240 N.C. 105, 81 S.E. 2d 203 (1954), where the court adjudged in an action in which Rosanna was a party, that she received only a life estate under the will.) Charles A. Fisher was named executor of the will.

(2) On 26 June 1907, this special proceeding was instituted by Fisher, executor, against C. W., Rosanna and Sarah. The purpose of the proceeding was to sell the land involved here, together with other lands belonging to testator, to make assets with which to pay debts of the estate. An order of sale was entered by the clerk and Fisher was named commissioner to sell the lands.

(3) At a sale conducted by Fisher, C. W. became the last and highest bidder of lot no. 1 for $60. Fisher reported the sale to C. W., along with other sales, to the court. On 14 September 1907, the clerk entered an order confirming the sales and authorizing and directing Fisher to execute deeds to the purchasers upon payment of the purchase prices.

(4) In June of 1908, Fisher instituted a special proceeding to sell another tract of land left by the testator for purpose of making assets with which to pay debts of the estate and costs of administration.

(5) In August of 1908, Fisher filed his final accounting as executor of the estate. Under receipts he reported various sums

received from sale of four parcels of land to persons other than C. W. As to C. W., and under "receipts," Fisher made the following entry: "2 Lots bid off by C W Misenheimer, never paid for and still belongs to the estate. (No amount received.)" Deeds for the other lands sold were executed by Fisher to the respective purchasers, and recorded, but no deed was made by Fisher to C. W. or anyone else for lot no. 1.

(6) The validity of the two special proceedings was upheld in an opinion by this court reported in 11 N.C. App. 475, 181 S.E. 2d 773, *cert. denied,* 279 N.C. 395, 183 S.E. 2d 242 (1971).

(7) Sarah died in 1918 or 1919. Rosanna was married to George Taylor in April of 1914 and he predeceased her. Rosanna was survived by two children, Mrs. Burgess and Mrs. McRorie, who were born in 1917 and 1920 respectively.

(8) On 21 November 1924, Rosanna and her husband, by warranty deed, conveyed "[a]ll their undivided one-half interest in and to" lot no. 1 to C. W. In February of 1925, C. W. and wife, by warranty deed, conveyed "[a]ll his undivided one half interest in and to" lot no. 1 to Rosanna. The deeds were duly recorded soon after their execution.

(9) As of 28 March 1936, by mesne conveyances, including deeds from Rosanna and husband and C. W. and wife, Harry A. Martin had acquired title to lot no. 1. On 12 March 1947, Martin and wife executed a warranty deed to movants Query purporting to convey the land involved in this appeal, the same being the northern half of lot no. 1, containing approximately six-tenths of an acre.

(10) On 31 March 1954, and 5 April 1954, Mrs. Burgess, Mrs. McRorie and their husbands executed deeds to Cruse quitclaiming and remising to him one-half interest in certain lands formerly belonging to testator, including the lands involved here.

(11) Rosanna died on 26 December 1965; C. W. and Fisher are also deceased.

(12) C. W. and Rosanna, and those claiming title to the subject property including movants Query, have had continuous and uninterrupted possession of the subject property since June of 1907.

(13) On 10 June 1968, Mrs. McRorie, her husband, and Mrs. Burgess instituted an action against the Querys, movants

herein, asking for a declaration of their title to, and possession of, the subject property. The Querys filed answer and cross action, pleading numerous defenses, and asking that Cruse be made a party defendant; Martin and wife, grantors in the warranty deed to the Querys, asked to be made parties defendant. Additional parties were made as requested.

(14) On 18 November 1971, the Querys filed a motion in the 1907 special proceeding asking that an executor, c.t.a., d.b.n., and commissioner be appointed by the court to complete the administration of testator's estate and this proceeding, and that the person so appointed be directed to execute a deed to the Querys for the subject property. On the next day, pursuant to Rule 68, the Querys filed a tender of payment of the $60 purchase price, plus interest. Mrs. McRorie, Mrs. Burgess and Cruse were allowed to intervene and file answer to the motion.

(15) On 20 April 1972, following a hearing, the clerk entered an order finding facts and making conclusions of law substantially as follows: This special proceeding is still pending in contemplation of law; upon receipt of the bid price after the judicial confirmation, C. W. or his assigns " . . . was entitled to a deed conveying title as of the date of the sale . . . "; movants Query, as assignees of C. W. and Rosanna, are entitled to the relief to which C. W. and Rosanna would be entitled if living; upon appointment of a commissioner and conveyance of the subject property to movants Query, this proceeding will be consummated and the administration of the estate of testator will have been completed. The clerk appointed a commissioner with directions to execute and deliver to the Querys a deed for the subject property. Intervenors appealed from the order of the clerk.

(16) Thereafter, this cause, together with the action filed on 10 June 1968, came on for hearing before Judge Exum upon appeal from the clerk's order and on motions of various parties for summary judgment. Following a hearing, Judge Exum entered judgment making findings of fact and conclusions of law in favor of the Querys and ratifying and affirming the order of the clerk. He also adjudged that his decision in this cause was determinative of the rights of the parties in the June 1968 action and dismissed it.

The two causes were argued and considered together in this court but separate opinions are being filed. Further pertinent facts appear in the opinion.

*Hartsell, Hartsell & Mills, P.A., by William L. Mills, Jr., and Williams, Willeford, Boger & Grady, by John Hugh Williams, for movants appellees.*

*Cole & Chesson, by James L. Cole, for intervenor appellants.*

BRITT, Judge.

Did the court err in entering the judgment ratifying and affirming the order of the clerk appointing a commissioner to consummate a judicial sale made in 1907 upon the payment of bid made at the sale, plus interest? We hold that it did.

No party to this cause has cited, and our research has not disclosed, a precedent that controls this case. Applying well defined legal principles to the facts, however, leads us to conclude that when C. W. became the last and highest bidder for lot no. 1, a contract was created between him and Fisher, acting as commissioner of the court. The contract was subject to a confirmation by the court, and when the sale was confirmed, the contract became binding on C. W. and on Fisher. While Fisher was entitled to proceed with legal action to compel C. W. to comply with his bid, Fisher did not pursue that course but treated C. W.'s failure to comply as an abandonment of the contract by C. W. In all probability, Fisher concluded that payment of the debts of the estate required considerably more than the $60 bid by C. W., therefore, he instituted the second special proceeding to sell the 38-acre tract, which brought $750. Thus the question arises, did C. W. abandon his contract with Fisher?

In *May v. Getty,* 140 N.C. 310, 316, 53 S.E. 75 (1905), we find:

> It is now well settled that parties to a written contract may, by parol, rescind or by matter *in pais* abandon the same. *Faw v. Whittington,* 72 N.C., [sic] 321; *Taylor v. Taylor,* 112 N.C., [sic] 27; *Holden v. Purefoy,* 108 N.C., [sic] 163; *Riley v. Jordan,* 75 N.C., [sic] 180; *Gorrell v. Alspaugh,* 120 N.C., [sic] 362. In the case first cited, BYNUM, J., for the Court, says: "The contract is considered to have remained in force until it was rescinded by mutual consent, or until the plaintiffs did some acts inconsistent with the duty imposed upon them by the contract which amounted to an abandonment." *Dula v. Cowles,* 52 N.C., [sic] 290; *Francis v. Love,* 56 N.C., [sic] 321. What will amount to an abandonment of a contract is of course a question of law

and the acts and conduct which are relied on to constitute the abandonment should be clearly proved, and they must be positive, unequivocal, and inconsistent with the existence of a contract, but when thus established they will bar the right to specific performance. *Miller v. Pierce,* 104 N.C., [sic] 390; *Faw v. Whittington, supra; Holden v. Purefoy, supra.* . . .

Appellees cite *Wood v. Fauth,* 225 N.C. 398, 35 S.E. 2d 178 (1945). In that case, the court held that the report of sale in a partition proceeding, duly confirmed, confers upon the bidder certain rights of which the bidder cannot be summarily deprived; and upon the facts appearing in that case the bidder, upon a motion to show cause, should have been allowed a reasonable time within which to comply before the court vacated the sale and ordered a resale. We think *Wood* is distinguishable from the case at bar, primarily by reason of the time element. In *Wood,* approximately three years passed between the date of the sale and the order purporting to set it aside and ordering a resale. Even then, the court stated that *"[u]nder the circumstances of this case* we think the court below was in error in vacating the previous order of confirmation and ordering resale without affording defendant reasonable time as prayed within which to pay the full amount of her bid in cash. . . . " *Wood, supra* at 399-400.

In the portion of the *May* opinion quoted above, the court alluded to a contract remaining in force until rescinded by mutual consent or until one of the parties did something inconsistent with the duty imposed by the contract which amounted to an abandonment. Certainly, the sum total of the things that C. W. did, or did not do, amounted to an abandonment of his contract to purchase lot no. 1 for $60. In the first place, he failed to pay the $60 and demand a deed. Next, he evidently filed no exception to Fisher's final account which stated that because of C. W.'s failure to comply with his bid, the lots he bid on would continue to belong to the estate. Finally, his acceptance of a warranty deed from Rosanna in 1924 for her " . . . undivided one-half interest in and to" lot no. 1, and his execution in 1925 of a warranty deed to Rosanna for "[a]ll his undivided one half interest in and to" lot no. 1, were acts inconsistent with the duty imposed upon him by the contract with Fisher and tended to show an abandonment of the contract. In fact, the exchange of deeds between C. W. and Rosanna indicated

that they agreed with the statement in the final accounting that the lots which C. W. did not pay for continued to belong to "the estate" and that as the two children of testator, they considered themselves to be "the estate" and, however erroneously, the fee simple owners of the property.

Movants Query have no greater right to consummate the 1907 sale than C. W. would have if he were living. The conclusions of law on which the trial court based its judgment included conclusions that lot no. 1 has been *in custodia legis* since the date of the order of confirmation of sale, that said confirmation by the court conferred upon C. W. certain legal rights in and to the subject property "of which neither he nor his assignees have been divested," and that movants Query, as assignees of C. W., have succeeded to all of the rights, title and interest of C. W. in this proceeding and in and to the subject real estate. We reject those conclusions.

For the reasons stated, the judgment appealed from is

Reversed.

Judges CAMPBELL and VAUGHN concur.